TIME SAVER CO. v. STAMFORD TRUST CO.

(Circuit Court of Appeals, Second Circuit. January 11, 1910.)

No. 101.

PATENTS (§ 328*)—INVENTION—BANK ACCOUNT BOOK.

> The Rand patent, No. 746,157, for a bank account book, in which the leaves have a vertical crease down the center, upon which the outer half may be folded forward or backward to facilitate the carrying forward of balances to another page, is void for lack of invention, in view of the prior art, as shown in the Wever and Parmerter patent, No. 632,769.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the Time Saver Company against the Stamford Trust Company. Decree for defendant, and complainant appeals. Affirmed.

R. Cushman, for appellant.

E. R. Newell, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

───────────

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

NOYES, Circuit Judge. This is a suit in equity to restrain the alleged infringement of letters patent No. 746,157 issued December 8, 1903, to James H. Rand for an improvement in bank ledgers or similar books and assigned to the complainant.

The patent relates particularly to skeleton or daily balance ledgers used in banks for recording the daily deposits, withdrawals, and balances of depositors. Each page is provided with vertical lines dividing it into columns to receive the appropriate items for different days as well as the names of the depositors. On each page are usually three groups of columns, so that when the ledger is open spaces for six days' transactions are shown. The successive pages required for the names of depositors are termed a section. Sections recording the weekly transactions are repeated throughout the book. At the end of each week it is necessary to continue each depositor's account in the next succeeding section by carrying forward the balance of the last day. In the absence of a device to facilitate the operation it was the practice in transferring balances to bend the successive pages of the old weekly section forward so as to expose Saturday's transactions and to bend the corresponding pages of the new section backward to expose Monday's column and the additional column for Saturday's balance. This practice required much care in adjusting the corresponding horizontal lines and the leaves turned toward each other were bulged at the center.

The primary object of the patent in suit was to facilitate this operation of the carrying of the balances forward. In the ledger of the patent there is a vertical crease or perforation at the middle of each leaf. At the end of the week, when it is desired to carry over the balances, the left-hand page is folded forward at the crease, and the corresponding right-hand page, with the intervening leaves, is folded backward. The creases being vertical in the middle of the pages, the edges of the leaves meet at the center of the book in proper alignment and the leaves lie comparatively flat.

The first claim of the patent—which may be taken as illustrative—is as follows:

"An account book having leaves creased vertically midway between their bound edges and their free outer edges whereby opposing leaves meet at the center of the book when folded toward each other, each leaf being provided on opposite sides of its crease with account columns having appropriate headings, and at its outer vertical margin with a balance column having a suitable heading substantially as set forth."

It is unquestionable that account books with creased leaves were old. It is also certain that account columns with appropriate headings—and even marginal balance columns—had been used or described before the time of this patent. Indeed all the complainant contends for as novel is the combination with the other elements of the vertical crease in the middle of the pages.

While the vertical crease of the claim is not referred to anywhere in the patent as being double-acting, it must necessarily be of that nature to operate as described. Each leaf must be folded both forward and backward and the crease must permit this to be done. The patentee says that "one or more lines of perforations formed in the middle of the leaves" may be employed in lieu of the crease.

The defense being invalidity of the patent, it is thus necessary to look in the prior art for an account book with vertical creases or perforations in the middle of each page permitting it to be turned forward and backward. But in making this investigation we are not called upon to go further than to the Wever and Parmerter patent, No. 632,-769, of September 21, 1899, which likewise relates to bank account books. If that patent does not anticipate or show such a state of the art as to negative invention, no other patent or prior use does. The complainant concedes, and the defendant claims, that it is the best reference.

The object of the Wever and Parmerter patent is substantially the same as that of the patent in suit. The patentees speak of carrying over the balance from one week to the next and say:

"The purpose and object of our invention is to facilitate the accurate transferring of these balances by having exposed to the view of the accountant the name of the depositor in the preceding closed period or week and at the same time the names of the same depositors in the succeeding period or v ʻek to which the balance is being carried, and also to have the transferring point approximately at the center of the page, or, in other words, a considerable distance from its edges, which makes the transferring of the balance much easier and much more convenient than when made at the edge of the book."

The first claim of the Wever and Parmerter patent is illustrative:

"An account book comprising a plurality of leaves containing the depositor's name or the subject-matter of the account, each leaf provided with a forwardly folding crease at a point sufficiently removed from its edge to expose the depositor's name, and the succeeding leaves adapted to be turned backward to receive the balances of the accounts, substantially as described."

While the claims of the Wever and Parmerter patent speak of a forwardly folding crease, the specifications say:

"Each page is provided with a vertical crease or line of perforations."

It is undoubtedly true that the preferred form of construction under the Wever and Parmerter patent does not anticipate the patent in suit. The crease is located a considerable distance from the middle of the leaf toward the edge. Consequently, when the left-hand leaf is folded forward upon the crease, it does not meet the right-hand leaf, which is bent backward, anywhere near the center of the book.

This construction was apparently considered by the present patentee to be the only construction of the Wever and Parmerter patent, and an objection thereto was thus pointed out by him when that patent was cited against him in the Patent Office:

"In Wever and Parmerter, No. 632,769, the leaves are creased between their middle and their outer edges, and the leaves when folded for transferring balances, therefore, do not reach the center of the book, but extend merely to the center of the page. This requires the right-hand leaves to be rolled or bulged at the center of the book, * * * which is objectionable."

This objection the patentee sought to, and undoubtedly did, remove by the improvement of the patent in suit. But the difficulty is that he did not escape the Wever and Parmerter patent by so doing. He apparently overlooked the alternative construction permitted by the specifications of that patent. After describing the preferred form of construction it is said:

"Or the first balance column and transactions of the first day may be placed before the name column without varying from the principle of our invention."

The "transactions of the first day" are, obviously, the transactions for Monday, including the deposits, checks, and balance. Those are the items included under the headings for each day as shown in all the drawings of the patent.

Now the Wever and Parmerter patent calls for a crease or perforation which must be so located as to expose the depositors' names when the left-hand page is folded forward. Consequently the crease must be at the right of the depositors' names—the name column—on the left-hand pages. But "the first balance column and the transactions of the first day" together with the name column would, according to the drawings of the patent, occupy substantially half the left-hand page. This would bring the vertical crease practically in the middle of the page. Folding the left-hand leaf upon the crease, and turning the right-hand pages backward, would make the opposing leaves meet at practically the center of the book. It is true that the patent does not expressly call for backward folding creases in the right-hand leaves, but it does say in its claims that the leaves "must be adapted to be turned backward to receive the balances." And the most obvious way of turning them backward would be to fold them upon the line of the forwardly folding creases. This would bring the edges of the right-hand leaves, like the edge of the left-hand leaf, substantially at the center of the book. If the pages were perforated, instead of creased, it is hardly conceivable that they would be turned back upon anything else than the line of perforations. Therefore it seems to us that the Wever and Parmerter patent may fairly be said to present an account book with creases or perforations in the middle of each page, permitting it to be turned forward and backward, and, consequently, to anticipate the patent in suit.

But whether, in view of the fact that the crease of the Wever and Parmerter alternate construction does not necessarily come precisely at the middle of the page, and thus bring the edge of the folded leaf at the exact center of the book, and of the further fact that it is not expressly required that the right-hand leaves should be folded backward flat upon the same crease or perforations, anticipation is shown, we need not definitely determine. It is sufficient now to say that, in our opinion, a person skilled in the art, with this construction before him, would have no difficulty by the use of mere mechanical skill in making the creases or lines of perforations precisely in the middle of each page, and in so making them that the left-hand pages could be turned forward and the right-hand pages turned backward upon them.

It follows, then, that the first claim of the patent is invalid for want of invention in view of the prior art. This disposes of the case. There is nothing in the remaining claims showing invention, if it is absent from the first claim. The second and third claims are not materially different from the first. The additional elements of the fourth and fifth claims do not help them.

The decree of the Circuit Court is affirmed, with costs.